Ronald W. Opsahl, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

Attorney for Intervenors-Defendants
Montana Farm Bureau Federation,
Idaho Farm Bureau Federation, and
Mountain States Legal Foundation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| DEFENDERS OF WILDLIFE, *et al.*, | ) | |
| | ) | Case Nos.   CV 09-77-M-DWM |
| Plaintiffs, | ) | CV 09-82-M-DWM |
| | ) | (consolidated) |
| v. | ) | |
| | ) | **MONTANA FARM BUREAU** |
| KENNETH L. SALAZAR, | ) | **FEDERATION, IDAHO FARM** |
| Secretary of the Interior, *et al.*, | ) | **BUREAU FEDERATION, AND** |
| | ) | **MOUNTAIN STATES LEGAL** |
| Defendants, | ) | **FOUNDATION'S** |
| | ) | **MEMORANDUM IN SUPPORT** |
| STATE OF IDAHO, *et al.*, | ) | **OF CROSS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| Intervenors-Defendants. | ) | **CONSOLIDATED RESPONSE TO** |
| _____ | ) | **PLAINTIFFS' MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT** |
| GREATER YELLOWSTONE | ) | |
| COALITION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |

```
                              )
KENNETH L. SALAZAR,           )
Secretary of the Interior, et al.,   )
                              )
        Defendants,           )
                              )
MONTANA FARM BUREAU           )
FEDERATION, et al.,           )
                              )
        Intervenors-Defendants.   )
_____ )
```

Intervenors-Defendants, Montana Farm Bureau Federation, Idaho Farm

Bureau Federation, and Mountain States Legal Foundation, by and through their

undersigned counsel, hereby file this Memorandum in Support of Intervenors-

Defendants' Cross-Motion for Summary Judgment and Consolidated Response to

Plaintiffs' Motions for Summary Judgment, Doc. Nos. 105, 106.

## **INTRODUCTION**

These consolidated cases present an appeal of an administrative decision in

which Plaintiffs seek judicial review of the United States Fish and Wildlife

Service's ("FWS's") decision to designate the Northern Rocky Mountain

population of gray wolf (*Canis lupus*) as a distinct population segment ("Rocky

Mountain DPS") and remove that population, except in the State of Wyoming,

from the Endangered Species Act's ("ESA's") list of endangered and threatened

wildlife.  *See* Fish and Wildlife Serv., *Final Rule To Identify the Northern Rocky*

*Mountain Population of Gray Wolf as a Distinct Population Segment and To Revise the List of Endangered and Threatened Wildlife*, 74 *Fed. Reg.* 15,123 (Apr. 2, 2009) ("Revised Listing Rule").  The Revised Listing Rule represents the culmination of lengthy and involved rule-making processes and recurrent litigation, after which, in full accordance with the ESA, FWS designated the Rocky Mountain DPS and found that continued ESA protections were only required for that portion of the DPS located in Wyoming.  *Id.*  The designation of the Rocky Mountain DPS and revised listing for wolves in the Northern Rocky Mountains should be applauded as an example of the ability of FWS to recover a species.  Instead, Plaintiffs in these consolidated cases seek to set aside the Revised Listing Rule.

## ARGUMENT

## I.   STANDARD OF REVIEW.

In evaluating whether FWS's decision complies with the ESA, this Court applies the scope of review set forth in the Administrative Procedure Act ("APA"), which provides that agency action may be overturned only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C);  *Marsh v. Or. Natural Res. Council*, 490 U.S.

360, 376 (1989); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,
414 (1971).  There is a presumption that FWS has acted in accordance with the
law, and a plaintiff challenging the agency's action bears the burden of proof to
show otherwise.  *Overton Park*, 401 U.S. at 415; *Wash. Crab Producers, Inc. v.
Mosbacher*, 924 F.2d 1438, 1441 (9th Cir. 1990); *Puyallup School Dist., No. 3 v.
Puyallup School*, 35 F.3d 1396, 1399 (9th Cir. 1994); *Sierra Club v. Marita*,
46 F.3d 606, 619 (7th Cir. 1995).  A reviewing court's role is to determine
whether "the decision was based on a consideration of the relevant factors and
whether there has been a clear error of judgment."  *Overton Park*, 401 U.S. at 416.
In doing this, a reviewing court may not weigh conflicting expert opinions or
consider whether the agency employed the best scientific methods.  *Friends of
Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 986 (9th Cir. 1985).  Nor may
a reviewing court sit as a "panel of scientists."  *Lands Council v. McNair*,
537 F.3d 981, 988 (9th Cir. 2008) (en banc).  Indeed, "[w]hen specialists express
conflicting views, an agency must have discretion to rely on the reasonable
opinions of its own qualified experts even if, as an original matter, a court might
find contrary views more persuasive."  *Marsh*, 490 U.S. at 378; *Lands Council*,
537 F.3d at 1000.  Accordingly, a reviewing court may only conclude that FWS
acted arbitrarily and capriciously if the "record plainly demonstrates that the

4

[FWS] made a clear error in judgment." *Lands Council*, 537 F.3d at 994.

Moreover, it is well established that:

[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Res. Defense Council*, 467 U.S. 837, 842–843

(1984).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In APA actions, a reviewing court may not make "findings" of facts, but simply must review the facts in the administrative record.  Therefore, summary judgment is applicable to cases involving judicial review of agency action.  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985).

## II.   THE REVISED LISTING RULE ACCORDS WITH THE ESA.

Plaintiffs argue that FWS is prohibited from promulgating the Revised

Listing Rule, purportedly because the ESA does not permit such a Rule because

FWS's interpretation of the ESA renders the DPS concept superfluous and

because the Rule conflicts with FWS's previous interpretations of the ESA.  Pls'

Memo. in Supp. of Mo. for Summ. J. at 5–9, Doc. No. 105-1 ("Defenders'

Memo."); Pl. Greater Yellowstone Coal.'s Memo. of P. & A. in Supp. of Mo. for

Summ. J. at 25–29, Doc. No. 106-1 ("GYC Memo.").[1]  These arguments are

without merit and must be rejected.

### A.   The plain language of the ESA supports the Revised Listing Rule.

Plaintiffs argue that the ESA's DPS provision, which is contained within the

definition of "species," 16 U.S.C. § 1532(16), provides FWS with the only

permissible flexibility in listing determinations.  Defenders' Memo. at 7; GYC

Memo. at 25.  This Court has also expressed concerns to this effect.  *See* Prelim.

---

[1]Plaintiff Greater Yellowstone Coalition has conceded that FWS properly designated the Rocky Mountain DPS and appears to challenge the decision only insofar as it removes ESA protections from a portion of the DPS while maintaining protections in the remainder of the DPS.  *See* GYC Memo. at 3 ("[T]he record fully supports the agency's longstanding scientific conclusion that wolves in Idaho, Montana and the Greater Yellowstone area form a cohesive Northern Rocky Mountain DPS.").

Inj. Order at 5–9, Doc. No. 93.[2]  This reading, however, is unnecessarily narrow and results in reading out a significant provision of the ESA:  the "significant portion of its range" provision.

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal citations and quotation marks omitted); *see United States v. Menasche*, 348 U.S. 528, 538–539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))).

The perceived conflict between the DPS language and the "significant portion of its range" language contained within the definitions of "endangered species" and "threatened species," 16 U.S.C. § 1532(6), (20), results from conflating the process by which FWS considers a species for addition to the ESA's list of endangered and threatened species.  Logically, first, FWS must define the

---

[2]Plaintiffs and this Court have cited *Alsea Valley Alliance v. Evans*, 161 F. Supp. 2d 1154 (D. Or. 2001), *appeal dismissed for lack of jurisdiction*, 358 F.3d 1181 (9th Cir. 2004), for the proposition that FWS may not afford disparate ESA protections to differing portions of a listed species' range.  That case, however, is inapposite, as that court was only presented with questions falling squarely under the DPS provision, not under the "significant portion of its range" provision.  *Id.*

organism being considered.  At this stage, FWS defines the "species" and the ESA provides flexibility in that definition:  a "species includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  *Id.* § 1532(16).

Once the group of organisms being considered is defined, FWS has the task of determining if that group is "endangered" or "threatened."  *Id.* § 1532(6), (20). The ESA also provides flexibility at this stage in that FWS considers whether the species is endangered or threatened "throughout all or a significant portion of its range."  *Id.*

That the same result may be reached, *i.e.*, that ESA protections may be afforded to a DPS or to a species throughout only a "significant portion of its range," via two separate provisions of law does not mean that either provision is superfluous or rendered ineffective.[3]  Indeed, there are many examples of environmental and natural resources statutes whereby the similar results may be obtained through the application of different provisions of law.  For example, in wildlife law, a migratory bird is protected from the unlawful killing and

---

[3]Moreover, as this case demonstrates, the DPS and "significant portion of its range" provisions are not coextensive.  *See also* Fed. Def's Combined Cross-Motion for Summ. J. & Opp. to Pls' Mo. for Summ. J. at 8, Doc. No. 114 ("FWS Memo.").

transportation across state lines by the Lacey Act, 16 U.S.C. § 3372, the Migratory Bird Treaty Act, *id.* § 703(a), and, if that bird is endangered or threatened, the ESA, *id.* § 1538.  If that bird happens to be a bald eagle in the Sonoran Desert DPS (the only remaining population of bald eagle listed under the ESA), the Eagle Protection Act, *id.* § 668(a), also precludes the killing and transportation of the bird.  *See Andrus v. Allard*, 444 U.S. 51 (1979) (holding both the Migratory Bird Treaty Act and the Eagle Protection Act prohibit the killing and transportation of bald eagles).

This belt-and-suspenders approach is not limited to wildlife law.  Both the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403, and Section 404 of the Clean Water Act, *id.* § 1344, prohibit the construction of a dam across a navigable waterway without a federal permit.  Further, any number of "overlay" statutes, *e.g.*, the Wilderness Act, 16 U.S.C. §§ 1131–1136, the Wild and Scenic Rivers Act, *id.* §§ 1271–1287, or the critical habitat provisions of the ESA, *id.* § 1532(5), provide "additional" authority for federal land management agencies to manage lands in a manner consistent with the purpose of the overlay statute, despite that those agencies arguably possess that authority under other applicable laws, such as the Federal Land Policy and Management Act, 43 U.S.C. §§ 1701–1785, the National Forest Management Act, 16 U.S.C. §§ 1600, 1611–1614, and the

Mutiple-Use Sustained-Yield Act, *id*. §§ 528–531.

Thus, it is possible, and indeed required, that this Court read the ESA in a way that provides effect to not only the DPS provision, but also to the "significant portion of its range" provision. *See Duncan*, 533 U.S. at 174. Plaintiffs' interpretation, however, fails to do so and must therefore be rejected.

**B.    FWS's interpretation of the ESA is reasonable and is entitled to deference.**

Although the DPS and "significant portion of its range" provisions are unambiguous, some ambiguity remains within the ESA. The ESA defines both "endangered species" and "threatened species" by keying on the risk of extinction "throughout all or a significant portion of [the species'] range." 16 U.S.C. § 1532(6), (20); *see also Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1141 (9th Cir. 2001). Logically, "all" would be a "significant portion" of a species' range. Indeed, once the risk of extinction occurs throughout a "significant portion" of a species' range, ESA listing may be warranted. The "all" threshold would never be met, which would render the term superfluous:  a result disfavored in statutory interpretation. *See Duncan*, 533 U.S. at 174. Congress included both triggers—"all" and "a significant portion"—thus rendering the key provision of the definitions of "endangered" and "threatened" species ambiguous. Thus, this

Court must defer to FWS's reasonable interpretation of the statute.  *Chevron*,

467 U.S. at 842–843.

In 2007, the Solicitor of the Department of the Interior provided guidance as

to the extent of the ESA's requirements regarding the consideration of historic

range.  *See* Memorandum from Solicitor, United States Dep't of Interior to

Director, United States Fish & Wildlife Serv. (Mar. 16, 2007) (AR2009-39216)

("Solicitor's Memo").  In addition, the Solicitor's Memo addressed the ambiguity

inherent in the definitions of "endangered" and "threatened" species, noting that

the ESA permits FWS to list a species as endangered or threatened in only that

portion of its range where protections are necessary for the continued existence of

the species.  Solicitor's Memo at 3.

The Solicitor's Memo concluded:

1.  The ["significant portion of its range"] phrase is a substantive
standard for determining whether a species is an endangered
species—whenever the Secretary concludes because of the statutory
five-factor analysis that a species is "in danger of extinction
throughout . . . a significant portion of its range," it is to be listed and
the protections of the ESA applied to the species in that portion of its
range where it is specified as an "endangered [or threatened] species";

2.  [T]he word "range" in the ["significant portion of its range"]
phrase refers to the range in which a species currently exists, not to
the historical range of the species where it once existed;

3.  [T]he Secretary has broad discretion in defining what portion of a

11

range is "significant," and may consider factors other than simply the size of the range portion in defining what is "significant"; and

4. [T]he Secretary's discretion in defining "significant" is not unlimited; he may not, for example, define "significant" to require that a species is endangered only if the threats faced by a species in a portion of its range are so severe as to threaten the viability of the species as a whole.

Solicitor's Memo at 3 (emphasis added).  Intervenors-Defendants are unaware of any formal FWS guidance prior to the Solicitor's Memo regarding the meaning of the "all or a significant portion of its range" language contained within the statutory definitions.[4]

By limiting a listing to only that portion of a species' range in which it is actually threatened or endangered, this policy is reasonable and fulfills Congress's intent that ESA protections be afforded at the earliest possible time.  16 U.S.C. § 1531.  This policy enables FWS to afford protections to only a portion of a species' range and, thus, potentially obviates the need for a range-wide listing at a later date.  Thus, this Court must afford FWS deference in its Revised Listing Rule because FWS based that decision, *inter alia*, on the well-reasoned opinion of the

---

[4]Although Plaintiffs and this Court note that FWS has in the past discussed the limits of the DPS provision, *see, e.g.*, Defenders' Memo. at 9; Prelim. Inj. Order at 8, these past statements are inapposite to the current issue.  They were made in reference to a completely different provision of the ESA and, as such, have no bearing on the instant case.

Solicitor.  *Chevron*, 467 U.S. at 842–843.

**C.    Continuing ESA protections for the Wyoming portion of the Rocky Mountain DPS is reasonable and lawful.**

Plaintiffs argue that FWS is precluded from continuing to provide ESA protections for the Wyoming portion of the Rocky Mountain DPS, while removing those protections for the remainder of the DPS, including Montana, Idaho, eastern Washington, eastern Oregon, and northeastern Utah.  Defenders' Memo. at 9; GYC Memo. at 27–29.  Plaintiffs also argue that to split the Rocky Mountain DPS along political lines, *i.e.*, the Wyoming borders with Idaho, Montana, and Utah, is precluded by the ESA.  Defenders' Memo. at 9; GYC Memo. at 27–29.  The ESA, Plaintiffs argue, requires the consideration of only biological, not political, factors. *Id.*  These arguments are belied by the plain language of the ESA and FWS's reasonable interpretation of the "significant portion of its range" provision.

As demonstrated above, the ESA permits FWS to list a species, including a DPS, in only that portion of its range in which protections are necessary.  In this case, FWS properly determined that the Wyoming portion of the DPS's range is significant and that the regulatory mechanisms in that portion of the range are inadequate.  *See* 74 *Fed. Reg.* at 15,170–15,172, 15,179–15,184.  Moreover, in making ESA determinations, FWS is expressly required by the statute to consider

"the inadequacy of existing regulatory mechanisms." 16 U.S.C. § 1533(a)(1)(D).

Accordingly, not only was it reasonable for FWS to consider Wyoming's

regulatory protections, it is mandated by the ESA. *Id.* Thus, Plaintiffs' arguments

have no basis in fact or law and must be rejected.

## II.   FWS UTILIZED THE BEST AVAILABLE SCIENCE, AS REQUIRED BY THE ESA.[5]

Plaintiffs challenge the scientific bases underpinning FWS's Revised

Listing Rule, arguing that the agency failed to use the best available science as

required by the ESA. Defenders' Memo. at 9–16. This argument has no basis in

fact and must be rejected.

In support of their assertions, Plaintiffs point to several scientific reports

discussing population viability in general and selective quotations from peer

reviews conducted as part of FWS's ongoing wolf recovery analyses. *See, e.g.*, *id.*

at 10–13. Plaintiffs, however, fail to mention that the administrative record is also

replete with scientific reports and reviews that support the Revised Listing Rule.

*See generally* AR2008-22376–22596 (peer reviewer comments).

The mere presence of dissenting opinions in the record is not a sufficient

basis for this Court to set aside the Revised Listing Rule. *Trout Unlimited v.*

---

[5]Intevernors-Defendants, Montana Farm Bureau Federation, *et al.*, also adopt by
reference the arguments of Federal Defendants regarding this issue.

*Lohn*, 559 F.3d 946, 956 (9th Cir. 2009); *Marsh*, 490 U.S. at 378; *Lands Council*,

537 F.3d at 993.  In this case, FWS utilized its expertise in determining the best

course of action regarding the Rocky Mountain DPS.  As such, this Court must

defer to FWS and reject Plaintiffs' arguments.

## III.  THE REGULATORY SCHEMES OF THE STATES OF IDAHO AND MONTANA WILL ADEQUATELY PROTECT THE ROCKY MOUNTAIN DPS.

### A.  FWS's analysis regarding genetic exchange was well reasoned and is entitled to deference.[6]

Plaintiffs again challenge the "requirement" for genetic exchange between

all core wolf recovery areas before FWS may be permitted to delist wolves in the

northern Rocky Mountains.  Defenders' Memo. at 17–19; GYC Memo. at 11–25.

The purported requirement regarding genetic exchange was first stated in a

memorandum from an undisclosed scientist as part of the preparation of the 1994

Environmental Impact Statement for the Reintroduction of Gray Wolves to

Yellowstone National Park and Central Idaho ("1994 EIS").  1994 EIS at 6-75

(AR2009-42228) ("a meta-population with genetic exchange between

sub-populations should have a high probability of long-term persistence").  From

---

[6]Intervenors-Defendants, Montana Farm Bureau Federation, *et al.*, also adopt by reference the arguments of Federal Defendants and Intervenors-Defendants State of Montana and State of Idaho regarding this issue.

this, Plaintiffs infer that any genetic exchange must occur without the assistance of wildlife managers.  Defenders' Memo. at 16–19; GYC Memo. at 22–25.  The undisclosed scientist in the 1994 EIS, however, never urged such a requirement. To the contrary, the undisclosed scientist expressly acknowledged that genetic exchange may be accomplished through "intensive migration management," *i.e.*, through the translocation of wolves between core recovery areas.  1994 EIS at 6-75 (AR2009-42228).  He continued:

> Intensive migration management might become necessary if one of the three sub-populations should develop genetic or demographic problems.  I see no reason why migration management should be view [sic] negatively.  It will be necessity in other wolf recovery programs.

*Id*.  Thus, despite Plaintiffs' strained reading of the purported requirement, FWS has never committed itself to unassisted dispersal as the only means to achieve genetic exchange between Rocky Mountain DPS sub-populations.  *Id*.  As such, Plaintiffs' arguments that genetic exchange will be insufficient must fail.

### B.  The regulatory commitments made by the States of Montana and Idaho will sufficiently protect the Rocky Mountain DPS.[7]

Plaintiffs argue that the regulatory commitments of Idaho and Montana are

---

[7]Intervenors-Defendants, Montana Farm Bureau Federation, *et al.*, also adopt by reference the arguments of Federal Defendants and Intervenors-Defendants State of Montana and State of Idaho regarding this issue.

insufficient to maintain the continued survival of the Rocky Mountain DPS.

Defenders' Memo. at 17–20; GYC Memo. at 14–22.  FWS, however, provided a

well-reasoned explanation demonstrating that the State regulatory plans are

sufficient to ensure the persistence of the Rocky Mountain DPS, 74 *Fed. Reg.* at

15,166–15,175, and is entitled to deference.  *Chevron*, 467 U.S. at 842–843;

*Lands Council*, 537 F.3d at 993.  Thus, Plaintiffs' argument has no merit and must

be rejected.

## IV.  PLAINTIFFS LACK STANDING TO CHALLENGE THE ESA SECTION 10(J) DESIGNATION OF THE ROCKY MOUNTAIN DPS IN WYOMING.

Plaintiffs argue that the Revised Listing Rule unlawfully designated the

Wyoming portion of the Rocky Mountain DPS as a Section 10(j) population.

Defenders' Memo. at 28; GYC Memo. at 31.  This argument defies logic because,

insofar as wolves in Wyoming are concerned, the Revised Listing Rule merely

maintains the status quo.  Regardless, Plaintiffs have failed to demonstrate that any

alleged injury would be redressed by a favorable decision by this Court.  As noted,

prior to the promulgation of the Revised Listing Rule, wolves in Wyoming were

designated a Section 10(j) population.  59 *Fed. Reg.* 60,252 (Nov. 22, 1994).  With

the Revised Listing Rule, FWS maintains that designation insofar as wolves in

Wyoming are concerned.  *See* 50 C.F.R. § 17.84(i), (n).  Should Plaintiffs succeed

and this Court sets aside the Revised Listing Rule, gray wolves in Wyoming

would still be a Section 10(j) population pursuant to the previous listing rule.

*Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("[T]he effect of

invalidating an agency rule is to reinstate the rule previously in force.").  Thus,

regardless of this Court's holding, wolves in Wyoming will continue to be

protected as a Section 10(j) population, and Plaintiffs' have failed to prove the

redressability prong of standing required for them to bring this claim.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Accordingly, this claim should

be rejected.

## V.   FWS'S ASSESSMENT OF THE SIGNIFICANCE OF UNSUITABLE AND UNOCCUPIED HABITAT WAS WELL REASONED AND IS ENTITLED TO DEFERENCE.[8]

Plaintiffs challenge FWS's determination that the Rocky Mountain DPS is

not threatened or endangered in a significant portion of its range, *i.e.*, areas that

remain unoccupied because they are unsuitable for the establishment of wolf

populations.  Defenders' Memo. at 28–30; GYC Memo. at 29–30 (arguing that

FWS was required to consider the historic range of the Rocky Mountain DPS,

which is in effect a challenge to FWS's analysis of unoccupied range).  This

---

[8]Intervenors-Defendants, Montana Farm Bureau Federation, *et al.*, also adopt by reference the arguments of Federal Defendants regarding this issue.

challenge is directed primarily at FWS's policy regarding the determination of habitat that is "significant" for the recovery of a species.  Here, FWS provided a detailed explanation of why peripheral habitat was deemed not to be a "significant portion of [the Rocky Mountain DPS's] range."  *See* 74 *Fed. Reg.* at 15,180–15,184.  This well-reasoned analysis is entitled to deference. *Chevron*, 467 U.S. at 842–843; *Lands Council*, 537 F.3d at 993.

## VI.   PLAINTIFFS' REQUESTED RELIEF SHOULD BE DENIED.

Plaintiffs have requested that the Rocky Mountain DPS Revised Listing Rule be set aside in its entirety.  Defenders' Memo. at 30–33; GYC Memo. at 31. As demonstrated above and by the memoranda submitted by Defendants and other Intervenors-Defendants, the Revised Listing Rule was lawfully promulgated and entitled to deference.  *Chevron*, 467 U.S. at 842–843; *Lands Council*, 537 F.3d at 993.  However, should this Court find any of Plaintiffs' arguments meritorious, Plaintiffs' requested relief goes too far.  Instead of setting aside the Rule in its entirety, this Court should sever those portions of the Rule found insufficient and remand only those portions to FWS for further actions consistent with this Court's conclusions.  The remainder of the Revised Listing Rule should be permitted to remain in effect during any ordered remand.

19

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motions for Summary Judgment should be denied and Summary Judgment entered in favor of Intervenors-Defendants.

DATED this 2nd day of December 2009.

/s/ Ronald W. Opsahl
Ronald W. Opsahl, Esq.
MOUNTAIN STATES LEGAL FOUNDATION
2595 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
ropsahl@mountainstateslegal.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 4,026 words, excluding the caption and certificates of service and compliance.

DATED this 2nd day of December 2009.

/s/ Ronald W. Opsahl
Ronald W. Opsahl, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this, December 2, 2009, I served a true copy of the foregoing on the following persons by the following means:

| 1–5, 7–17, 19–20 | CM/ECF |
| 6, 18 | U.S. Mail |

1.  Douglas L. Honnold, Esq.
    Jenny K. Harbine, Esq.
    Timothy J. Preso, Esq.
    EARTHJUSTICE
    209 South Willson Street
    Bozeman, Montana 59715
    dhonnold@earthjustice.org
    jharbine@earthjustice.org
    tpreso@earthjustice.org

2.  Brian K. Gallik, Esq.
    GOETZ GALLIK &
    BALDWIN
    Post Office Box 6580
    Bozeman, Montana 59771
    bgallik@goetzlawfirm.com

3.  Deborah A. Sivas, Esq.
    Robb W. Kapla, Esq.
    MILLS LEGAL CLINIC
    Stanford Law School
    559 Nathan Abbott Way
    Stanford, California 94305
    dsivas@stanford.edu
    rkapla@law.stanford.edu

4.  Michael Richard Eitel, Esq.
    UNITED STATES
    DEPARTMENT OF JUSTICE
    1961 Stout Street, 8th Floor
    Denver, Colorado 80294
    michael.eitel@usdoj.gov

5.  Victoria L. Francis, Esq.
    OFFICE OF THE UNITED
    STATES ATTORNEY
    Post Office Box 1478
    Billings, Montana 59103
    victoria.francis@usdoj.gov

6.  Clive J. Strong, Esq.
    OFFICE OF THE IDAHO
    ATTORNEY GENERAL
    Post Office Box 83720
    Boise, Idaho 83720

7.  James David Johnson, Esq.
    WILLIAMS LAW FIRM
    Post Office Box 9440
    Missoula, Montana 59807
    james@wmslaw.com

22

8.    Lawrence G. Wasden, Esq.
      Steven W. Strack, Esq.
      OFFICE OF THE IDAHO
      ATTORNEY GENERAL
      700 West State Street,
      2nd Floor
      Post Office Box 83720
      Boise, Idaho 83720
      lawrence.wasden@ag.idaho.gov
      steve.strack@ag.idaho.gov

9.    Anna M. Seidman, Esq.
      SAFARI CLUB
      INTERNATIONAL
      501 2nd Street NE
      Washington, D.C. 20002
      aseidman@safariclub.org

10.   Robert Thomas Cameron, Esq.
      GOUGH SHANAHAN
      JOHNSON & WATERMAN
      Post Office Box 1715
      Helena, Montana 59624
      rtc@gsjw.com

11.   Paul A. Turcke, Esq.
      MOORE SMITH BUXTON &
      TURCKE
      950 West Bannock Street,
      Suite 520
      Boise, Idaho 83702
      pat@msbtlaw.com

12.   Robert T. Bell, Esq.
      REEP & BELL
      Post Office Box 16960
      Missoula, Montana 59808
      email@reepbelllaw.com

13.   Martha M. Williams, Esq.
      MONTANA FISH WILDLIFE
      AND PARKS
      Post Office Box 200701
      Helena, Montana 59620
      mwilliams@mt.gov

14.   Robert N. Lane, Esq.
      FISH, WILDLIFE & PARKS -
      LEGAL UNIT
      1420 East Sixth Avenue
      Helena, Montana 59620
      blane@mt.gov

15.   Stephen C. Bullock, Esq.
      OFFICE OF THE MONTANA
      ATTORNEY GENERAL
      215 North Sanders
      Post Office Box 201401
      Helena, Montana 59620
      sbullock@bullockfirm.com

16.   David F. Hensley, Esq.
      Office of the Governor
      750 West Bannock Street
      Boise, Idaho 83720
      (208) 334-2100
      (208) 334-2175 (facsimile)
      dhensley@gov.idaho.gov

17.   Thomas C. Perry, Esq.
      Species Conservation
      300 North 6th Street
      Boise, Idaho 83702
      (208) 334-2189
      (208) 334-2172 (facsimile)
      tperry@osc.idaho.gov

18.   Grant D. Parker, Esq.
      ROCKY MOUNTAIN ELK
      FOUNDATION
      5705 Grant Creek
      Missoula, Montana 59808
      (406) 523-4524
      (406) 523-0211 (facsimile)

19.   John I. Kittel, Esq.
      Mazur and Kittel, PLLC
      30665 Northwestern Highway
      Suite 175
      Farmington Hills, Michigan
      48334
      (248) 432-8000
      (248) 432-8010 (facsimile)
      jkittel@mazur-kittel.com

20.   Lon J. Dale, Esq.
      MILODRAGOVICH DALE
      STEINBRENNER & BINNEY
      Missoula, Montana 59806
      (406) 728-1455
      (406) 549-7077 (facsimile)
      lon@bigskylawyers.com


                              /s/ Ronald W. Opsahl
                              Ronald W. Opsahl, Esq.


                              24